## ANDERSON-PRICHARD OIL CORP. v. KEYOKLA OIL CO. et al.

No. 21503. Opinion Filed April 7, 1931.

Rehearing Denied June 23, 1931.

Allen & Jarman and Pearson & Houston, for plaintiff in error.

Embry, Johnson, Crowe & Tolbert, N. E. McNeill, and L. A. Rowland, for defendants in error.

RILEY, J. Plaintiff in error, as plaintiff below, commenced this action against defendants in error for injunctive relief, to restrain defendants from drilling an oil and gas well on certain property which was formerly a part of what was known as Govern. lot 7, and a part of the N. W. ¼ of the N. E. ¼ of section 2, township 11 N., range 3 W., Oklahoma county, Okla. The east boundary line of said lot 7 was the center line of the North Canadian river. A patent covering lot 7 was issued by the United States government to William H. Holley on June 23, 1900; through mesne conveyances Mrs. D. E. Moreland acquired title thereto on February 12, 1907. On March 28, 1907, she, together with A. B. Baird, who owned land on the N. E. ¼ of section 2, heretofore described, and lying contiguously east, platted the said lands, subdivided the same, and designated the supplemental plat as "Rosedale." This plat included all area theretofore in lot 7.

Thereafter Mrs. Moreland conveyed lots 11 and 16, together with other lots, according to the recorded plat, and through mesne conveyances W. S. Key became the owner of lots 11 to 16, inclusive, as shown by the recorded plat thereof. W. S. Key and wife, on November 23, 1928, executed and delivered an oil and gas lease to Anderson-Prichard Oil Corporation covering lots 11 to 16, inclusive, and described in said instrument as "containing 10.81 acres more or less."

On February 21, 1930, Mrs. Moreland executed and delivered to the Keyokla Oil Company, the president of which is W. S. Key, an oil and gas lease described in metes and bounds and lying in the bed and banks of the North Canadian river. along Woodlawn avenue as shown upon the plat and east of lots 11 and 16 heretofore described.

The Keyokla Oil Company entered the last-described premises and commenced the drilling of a well for oil and gas at a point between the west line of Woodlawn avenue and the center of Canadian river and west of lot 16.

The Anderson-Prichard Oil Corporation secured a temporary restraining order preventing the said drilling, under allegations that its right to minerals in lots 11 and 16 ran to the middle of the Canadian river. Upon a hearing for temporary injunction, relief was thereby denied. The restraining order was dissolved, and Anderson-Prichard Oil Corporation has appealed.

The defendant's theory is that the north line of lot 11 is 111 feet long, as shown by the plat, and the south line is 247 feet and so shown. The north line of lot 16 is 208.6 feet and the south 199 feet according to the plat. These lines and these distances are shown on the plat to be on the west of Woodlawn avenue and east of lots further west. Woodlawn avenue is a strip of land 30 feet wide east of said lines and yet there is land left between the east line of Woodlawn avenue and the river, which land is subject to ownership. Mrs. Moreland being the last owner of the whole area, including this land, subject to ownership, title is in her to such actual lands from the center of the river to the middle of Woodlawn avenue, and she has leased the same for oil and gas purposes to defendant Keyokla Oil Company.

The plaintiff's theory is that the east line of lots 11 and 16 is the center of the North Canadian river, shown as a natural monument upon the plat; that it was not the intention of Mrs Moreland to reserve from her deed of conveyance to lots 11 and 16, by which plaintiff claims, any area; that intention of the parties governs the deed to lots 11 and 16, and such intention is evidenced by the deed and the recorded plat mentioned in the deed: (1) That the plat shows no land between Woodlawn avenue and the river; (2) that if the courses and distances described in the plat do not carry the boundary to the river, the natural monument on the plat, then such distances and courses must yield to such natural monument, the monument governs as to the location of the east boundary; (3) that in order to get the number of acres called for by the plat, the east boundary of the lots must coincide with the center line of the river; (4) that in order to get the acreage called for in all other tracts in the addition which do not touch upon the river, it is

necessary to go to the outer limits of government lot 7 (such as lots to the north and west) and irrespective of the highway, and therefore it was intended that lots on the east, to wit, lots 11 and 16, would go to the exterior of government lot 7 regardless of the highway, and in order to secure the acreage called for in the plat; (5) that for over 23 years Mrs. Moreland asserted no claim to the lands in controversy, paid no taxes thereon and so construed her intent to convey in deeds to lots 11 and 16 to the center of the river; (6) that Rose avenue is shown by the plat as crossing the river as if it did not exist, which shows intention of the planners to plat the tracts to the center of the river. The Canadian river is a nonnavigable stream. Government lot 7 consisted of lands west of the river, extending from the center of the river.

Excerpts from the trial court's opinion follow:

"The patentee of this land * * * owned all of these lots on both sides of the river, and, of course, had a fee title to the bed of this stream from bank to bank. * * * His right to that land was not a riparian right. He owned it in fee. When he conveyed lot 7 to the grantor of Mrs. Moreland, * * * he conveyed that same right as to that part of the land which lay west of the center of the channel of this stream. Now, then, where that center line was, depended upon the location of the channel and the line from time to time shifted. That center line, not the bank of the stream, fixed the boundary of the ownership of Mrs. Moreland. * * * Now, the question is as to whether or not, at the time this plat was filed and this land was dedicated and these lots described therein were sold, she has conveyed away that part of it which lay between the * * * center line of Moreland avenue, * * * and the center line of the stream. The plaintiff contends she did; the defendant contends she didn't. The plaintiff contends * * * that by reason of the dedication of * * * Moreland Avenue * * * shown * * * to be bounded upon the east by the bank of the North Canadian river * * * upon conveyance of these lots west of it, there was conveyed * * * all of that land dedicated which would be to the center of the stream, subject to the right of the public to its use. They contend also that, even though their dedication doesn't include that, by reason of their ownership of the land opposite this road they have acquired title to land which is on the other side of the road and between that and the thread of the stream. It occurs to me now for two reasons, that that's not true. In the first place, * * * there is no reason * * * why one could properly contend that the bed of the stream was dedicated to the street, to which it would be of no use. It couldn't be, if this question came up now between the public and Mrs. Moreland, the public couldn't say that because you designated the bank of the stream as the east boundary of the public street that you intended to dedicate also the bed of this stream, which due to the winding thread of it, might be under certain conditions in places anywhere from 50 feet to 100 rods in width. Suppose that * * * instead of * * * a street * * * Mrs. Moreland had conveyed to a third party a strip of land 30 feet in width running along and being bounded on the east by the bank of the North Canadian river. No one, I believe, could contend that a strip of land which might be 200 feet in width to the thread of the stream, was conveyed. There is another * * * matter * * * that is, the plat itself. Now, the plaintiff's right is determined by the title of its lessor. * * * To determine where those lots lay, one has to look at the plat. Now, that plat bounds those lots as beginning at a certain corner and going so many feet east to * * * Woodlawn avenue, * * * and thence south following as their eastern boundary (Woodlawn) avenue. It is true that it shows the river as being immediately east of (Woodlawn) avenue. * * * A surveyor whom you put upon the witness stand, Mr. James, for the purpose of determining the location, went out there and located lots, these lots, 11 and 16, and located them in accordance of this deed and came in here and showed where that location was on the ground; he said that he was able, by scaling this map, to locate the boundaries of Woodlawn avenue without the direction and distances as to the west line of Woodlawn being given, * * * and (he) locates it as a strip of 30 feet wide and locates it exactly according to the picture as shown in the plat filed for record, and (he) was able * * * to go out and locate definitely * * * as what constitutes lot 11 and lot 16. * * * The deeds to these lots names no metes and bounds, simply describe the land by lot numbers. **Plaintiff's engineer has shown what this plat means to him.** Now, I have been impressed with the opinion that there is a title in fee in the bed of this stream, and, that, therefore, none of those cases which have reference to the dedication of the street on the outside margin of the grantor's property, are in point. It seems to me that the only thing you can look to is * * * the conveyance (to) determine whether or not the property * * * lying between the east line of Woodlawn avenue and the west line of the street on the other side of the river, was conveyed by this dedication. Now, the mere fact that nothing was done with this (land) and that it wasn't returned as property for taxation * * * I attach no significance to that, for * * * it confessedly was of no value (then), but it became valuable, and now everybody wants it. Suppose that this derrick had been constructed where it's proposed now to construct it prior to the time of this dedication and an oil well had been produced there, you couldn't contend

that by reason of this dedication and grant * * * in these lots * * * that it passed the right to that oil well by reason of it (the dedication). * * *"

As to the points covered in the view of the trial court, we can but reiterate and such would serve no useful purpose. It is contended by plaintiff in error that the areas of lots 11 and 16 are of less acreage than as shown on the plat, and consequently by reference in the deed to the plat there is actually less area than stated, and therefore the east boundary of lots 11 and 16 should be, as was intended, extended to the center of the river, thus giving ownership to the area in controversy to plaintiff.

It is our view that area as shown by the deed and the lease was a mere matter of estimate and resort is to be had to the area as shown by the plat in order to fix the boundary only when such boundary is not otherwise ascertainable, and quantity ought not be employed to make uncertainty, not otherwise existing, and then employed to decide the uncertainty.

The rule as to nonnavigable streams is stated in 27 R. C. L. 1357, section 267, and thereby the fee title thereto belongs to the riparian owner. St. Paul & Pac. R. R. Co. v. Schurmeier, 7 Wall. 272, 19 L. Ed. 74.

It is our view that a part of the bed of the North Canadian river, a nonnavigable stream, was conveyed to the original patentee, and as a part of lot 7 was vested in Mrs. Moreland to the middle of the stream, the east half being deeded to Baird. Mrs. Moreland once owned the fee on both sides of Woodlawn avenue and east to the middle stream. Her conveyance of all lots on the west side of the avenue passed title to the center of the avenue and possibly could have passed title to the whole of the avenue subject to public right had not she possessed something susceptible of ownership yet adjacent and to the east of it. Gettis Coarse Salt Co. v. Niagara L. & O. Power Co. (N. Y.) 101 N. E. 456; Johnson & Co. v. Arnold, 91 Ga. 659, 18 S. E. 370; In re Robbins (Minn.) 24 N. W. 356, 57 A. S. R. 40; Banks v. Ogden, 2 Wall. 57, 17 L. Ed. 818.

Many of the cases cited and relied upon by plaintiff in error are predicated upon circumstances as stated in Delachaise v. Maginnis (La.) 11 So. 715:

"A party who sells the entire estate owned by him up to the line of a public road or street bordering the river and **beyond which no property susceptible of private ownership exists at date of sale,** retains no estate which the accessory right to future alluvion could attach." And: "The intervention of a public road or street does not prevent the owner of the estate adjacent thereto from being considered as the front or riparious proprietor, when **nothing susceptible of private ownership exists between the road or street and the river.**"

These cases are inapplicable here for reason of the words emphasized and the facts in the case at bar that the river bed, the river being nonnavigable, together with the banks shown on the various plats, were susceptible of private ownership and indeed owned at the date of sale and alienation of lots 11 and 16 by the owner of the whole.

Plaintiff acquired its right by reference to a recorded plat which showed that lots 11 and 16 were bounded by a road 30 feet in width and separating said lots from the river and banks (section 4470, C. O. S. 1921). This plat was duly recorded (section 4474, C. O. S. 1921); therefore it is our view that the road constituted a monument marking the boundary of the lots (9 C. J. 195, sec. 83; 4 R. C. L. 118) by which the limits of the lots were ascertainable and ascertained. The last-cited text states the rule as follows:

"Where land is conveyed according to a plat, the courses, distances, and boundary lines delineated on it are to be regarded in legal construction as the description by which the limits of the grant may be ascertained; and whenever a deed describes property by reference to a plat or map, the grantor is considered as having adopted the plat or map as a part of the deed, and the grantee takes title in accordance with the boundaries so identified. Where an allotment is made by reference to a plat, and this indicates with certainty the location of every lot, although none of the boundary lines may have been actually run or located, if the lots can be surveyed and made certain, that will be sufficient; but where the lines have, in fact, been located and designated by monuments, and there is a discrepancy between the calls for these monuments and courses and distances shown by a plan referred to in the conveyance, the normal rule as to the controlling effect of calls for monuments will be followed. If no survey has been made or lines drawn with reference to monuments, the length of line given on a plan, measured accurately according to the scale upon which the plat in drawn, may be resorted to in determining the true location of the boundaries of the lots. * * *" 4 R. C. L. 118.

We conclude, therefore, that since lots 11 and 16 were conveyed by numbers, with reference to the official plat, Woodlawn avenue marked the eastern boundary, and was and is controlling over an estimate of area. Downey v. Hood & Sons (Mass.) 89 N. E. 24;

Cook v. Hensler (Wash.) 107 Pac. 178; Masterson v. Monroe, 105 Cal. 431, 45 A. S. R. 57; Barringer v. Davis (Iowa) 120 N. W. 65; Devlin on Real Estate, vol. 2, p. 1953; Hayden v. Hayden (N. C.) 100 S. E. 515; Ocean City Hotel & Dev. Co. v. Sooy (N. J. Law) 73 Atl. 236; Fuller v. Bilz (Mich.) 126 N. W. 712; Spinning v. Pugh (Wash.) 118 Pac. 635.

9 C. J. 227, sec. 162, states the rule as follows:

"The statement in a conveyance of the amount of land to be conveyed is not a factor in establishing boundaries, unless the more particular description expressed is indefinite and uncertain. It is very generally considered that quantity is the least certain element of description and the last to be resorted to in fixing boundaries. And even though a definite area is referred to in the description of the land, it will not prevail against a more particular and certain description and certain description by reference to monuments, natural or artificial, or marked lines, or courses and distances. Ordinarily 'all other elements of description must lose their superior value through ambiguities and uncertainties before resort can be had to quantity'."

See, also, South Penn. Oil Co. v. Knox (W. Va.) 69 S. E. 1020, wherein it was held:

"A statement of quantity is never allowed to control defined and reliable calls by monuments, courses and distances. All other elements of description must lose their superior value through ambiguities and uncertainties before resort can be had to quantity."

A certified copy of the plat under which plaintiff holds, found in the case-made, pp. 52-54, contains the following:

"We hereby dedicate the streets and alleys as shown on said map or plat to public use."

So it will be seen that there is no dedication of the strip of land east of Woodlawn avenue, nor of the river, but there is a dedication of Woodlawn avenue, which serves as an artificial monument to mark the eastern boundary of lots 11 and 16.

"The question of a dedication to the public use depends upon the intention of the parties, irrespective of how it is claimed to be made, and must be shown by clear evidence." Stover v. Steffey (Md.) 81 Atl. 33.

It is not presumed. Wilson v. Lakeview Land Co. (Ala.) 39 So. 303; Allen v. R. R. Com. (Cal.) 175 Pac. 466; Frye v. King Co. (Wash.) 275 Pac. 547; Town of Hooker v. Morris, 92 Okla. 194, 218 Pac. 869; Minton v. Smith, 102 Okla. 79, 227 Pac. 75; 18 C. J. 52.

Judgment affirmed.

LESTER, C. J., CLARK, V. C. J., and CULLISON, SWINDALL, and ANDREWS, JJ., concur. KORNEGAY, J., dissents. McNEILL, J., disqualified, not participating. HEFNER, J., not participating.