BOOTHE et al.    v.    McLEAN et al.

No. 3048.

Court of Civil Appeals of Texas.

Eastland.

March 19, 1954.

Rehearing Denied April 16, 1954.

V. S. Donoghue, Vinson, Elkins, Weems & Searls, Houston, Kilgore & Kilgore, Dallas, Wayland G. Holt, Snyder, for appellants.

Prentice Wilson, Dallas, Wagstaff, Harwells, Wagstaff & Alvis, McMahon, Springer, Smart & Walter, Abilene, for appellees.

GRISSOM, Chief Justice.

J. M. Boothe, Sr., and wife, Lydia Grabow Haines and husband, and Jake L. Hamon, William P. Castleman and Warren Petroleum Corporation sued William J. McLean and others in trespass to try title to the minerals in a strip of land 260 feet wide, subject to roadway and railroad easements, out of the north end of Survey 179 in Scurry County. The court rendered judgment that plaintiffs take nothing and J. M. Boothe, Sr., and wife, and Jake L. Hamon and William P. Castleman, hereinafter called the Boothe plaintiffs, and Lydia Grabow Haines and husband and Warren Petroleum Corporation, hereinafter called the Haines plaintiffs, perfected separate appeals.

The controversy is over the title to the minerals in said 260 foot strip of land, subject to the following easements: (1) on the east, a 60 foot county road, sometimes known as highway 7, which had been used for the prescriptive period in 1915, there being no conveyance of a right of way; (2) in the middle, a 100 foot right of way occupied by the Sante Fe Railway Company for railroad purposes; (3) on the west, a 100 foot strip formerly occupied by the Roscoe, Snyder & Pacific Railway Company,

hereinafter called the Roscoe Railway, for railroad purposes. The latter right of way was abandoned in 1949, the tracks were removed and it is no longer used for railroad purposes. The strip, over which there were the three right of way easements, angles generally north and south across Section 179. In the north end of Section 179, adjoining said 260 foot strip on the east, Boothe owns the fee title and Hamon and Castleman own the oil and gas leasehold. Lydia Grabow Haines owns the fee title and Warren owns the oil and gas leasehold to the west of said strip, there being a dispute, however, as to their eastern boundary.

The Boothe plaintiffs' claim to a portion of the eastern part of the 260 foot strip is based on the application of the rule quoted below to the deed from Grabow to Yoder. In Cox v. Campbell, 135 Tex. 428, 143 S.W.2d 361, 366, the court said:

"The rule has been definitely announced in the Warwick and Weed cases that where a deed conveys by specific field notes land abutting on a street or public highway or railroad right of way, it conveys title to the property to the center of the street, public highway, or railroad right of way; and such rule is not overcome even though the field notes describing the land stop at the side line of the street, public highway, or railroad right of way, unless a contrary intention is expressed in plain and unequivocal terms."

In Joslin v. State, Tex.Civ.App., 146 S. W.2d 208, 211 (Writ Ref.), the court said:

"While the intention of the parties to a grant, where ascertainable, generally controls, the following significant language is used in the Rio Bravo case ([Rio Bravo Oil Co. v. Weed], 121 Tex. 427, 50 S.W.2d [1080] 1087, 85 A. L.R. 391): 'The prime object and purpose of such rules (of construction) is to enable them to ascertain and give effect to the true intention of the parties *unless such intention is inconsistent with some settled rule of law.*' (Italics

ours.) And the settled rule of law therein announced and followed in Cox v. Campbell, supra, is that, absent an express reservation, the grant is conclusively presumed to go to the center of the non-navigable stream, highway or railroad right of way. There being no such reservation in the grant, under such rule of construction, other evidence as to what was the intention of the parties becomes unimportant."

In Cantley v. Gulf Production Co., 135 Tex. 339, 143 S.W.2d 912, 916, the court said:

"Applying the foregoing principles announced by this Court to the facts involved here, the conclusion is inescapable, from the language used in the conveyance from Douglass and his children to the grantees, that it was the intention of the grantors to include this strip of land in such conveyance. Any other construction of such conveyance would nullify the rule announced in the decisions above cited, and which has become the public policy of this State."

In Texas Bitulithic Co. v. Warwick, Tex. Com.App., 293 S.W. 160, 164, the court said:

"Therefore we think the courts are exactly right when they say that a deed does carry the property to the center of the adjoining street unless such deed contains a clause which expressly declares the contrary intention or contains some other declaration equivalent to such an express declaration." See also 11 C.J.S., Boundaries, § 35, p. 586.

Those claiming under Scurry County must depend on the same rule.

The three McLeans, brothers and sister, owned all of Section 179 when the two railroad right of way easements and the 60 foot roadway easement were acquired some time prior to 1915. The record title to Section 179 is shown as follows: (1) the three McLean heirs are the agreed common

source of title; (2) prior to 1915, the two railroad rights of way were condemned and the rights of the public in the 60 foot county road vested by prescription; (3) in 1915, in a partition suit between said three McLeans, William J. McLean was awarded the north end of Section 179. The minerals in dispute are in the north part awarded to W. J. McLean and within said 260 foot strip. The middle of said section was awarded to Annie McLean, now Freeman, and the south end was awarded to Milton B. McLean. (4) In 1924, William J. McLean conveyed the north part of the section to A. F. Grabow. (5) In 1929, A. F. Grabow conveyed to D. P. Yoder the east part of the north end of Section 179, adjoining on the east the 60 foot county road. Said county road is the east side of the 260 feet in controversy. (6) The title of the Boothe plaintiffs is deraigned under D. P. Yoder. All subsequent conveyances in their chain of title contained the same description as the deed to Yoder. (7) Grabow died intestate leaving a wife and two daughters who, in 1932, partitioned his property by agreement and conveyed all of the north end of Section 179, except that previously conveyed to Yoder, to Lydia Grabow Haines. In this deed the property was described as follows:

" * * * all that certain tract or parcel of land situated in Scurry County, Texas, and being out of the North part of Survey No. 179 in Block No. 3 made by virtue of Certificate No. 9/1825 issued to the Houston & Great Northern Railway Company by patent No. 248 Volume No. 66 and more particularly described as follows, to-wit:

"Beginning at the N.E. corner of said Survey at a mound and four pits;

"Thence W with the N. line of said survey 1900 vrs to the NW corner of same at a mound;

"Thence S with the W line of said Survey 777–1 vrs to the corner of 178 acres set apart to Thelma McLean in partition of said 640 acres;

"Thence E with the N line of said Thelma McLean tract, 1900 vrs in E

line of said 640 acre survey; being NE corner of Thelma McLean 178 acre tract;

"Thence N with E line of said survey 777–1 vrs to the beginning, containing an area of 246.6 acres of land *exclusive of right of way of RR and Highways* which is excepted from this conveyance; and being the same tract of land conveyed to A. F. Grabow by William J. McLean and Mary McLean by Deed dated 29th of November 1924 and Recorded in Volume 51 page 363 Deed Records of Scurry County, Texas, said deed by book, volume and page of said Record Book being here referred to and made a part hereof for description of said tract of land.

"There is excepted, however, from said tract of land and this conveyance 127.8 acres of land heretofore conveyed out of same by A. F. Grabow to D. P. Yoder by Deed dated February 6th, 1929 and of record in the Deed Records of Scurry County, Texas, said Deed being referred for description of land excepted herefrom."

Thereafter, Mrs. Haines conveyed to Scurry County a 100 foot strip adjoining on the west the Roscoe Railway easement "for highway purposes," with provision for reversion in event of abandonment for highway purposes. This 100 foot strip is now Highway 84.

Plaintiffs contend (a) there is nothing in the McLean partition proceedings which shows an intention that the fee title to the 260 foot strip was not intended to be partitioned, subject to the easements, and, therefore, it was partitioned to William J. McLean, subject to said easements; (b) that when William J. McLean conveyed the north part of Section 179 to Grabow, his deed contained nothing amounting to a reservation of the fee title to said 260 feet, subject to said easements, and, therefore, title thereto passed to Grabow, subject to the easements; (c) the Boothe plaintiffs contend that when Grabow conveyed 128 acres out of the northeast part of Section 179 to Yoder, with calls for the east side of

the 60 foot county road as the western boundary of the tract conveyed, Yoder thereby acquired title to part of the 60 foot county road as a part and parcel of that grant under the rule heretofore quoted.

Defendants take the opposite view. They specially contend that the Haines plaintiffs do not have title to any portion of the minerals underlying the 260 foot strip because Mrs. Haines conveyed the fee title to Scurry County to a 100 foot strip which adjoins the 260 feet in controversy on the west and, thereby, conveyed to Scurry County her interest in the minerals under said adjoining 260 foot strip of land to the east. The Boothe plaintiffs say that Mrs. Haines' deed to Scurry County conveyed only an easement, but, regardless of its effect otherwise, Mrs. Haines' deed could not divest the Boothe plaintiffs of their fee title to the eastern part of the 260 feet. Defendants say that the Haines plaintiffs are estopped to assert ownership of any of the easement strip because Warren, for the purpose of fixing its allowable for oil production from the Haines lease, filed with the Railroad Commission a map showing the eastern boundary of its lease of the Haines land to be at the west side of the 100 foot strip conveyed by Mrs. Haines to Scurry County, and by proof that there was on record quitclaim deeds from Milton McLean and Annie McLean Freeman to Mrs. Haines to the western part of the north end of Section 179, which deeds call for her eastern boundary as the west side of Highway 84.

When W. J. McLean sued his brother and sister for partition of Section 179, he alleged they were the heirs of J. E. McLean and wife and that at the time of their death they were seized in fee simple and possessed of "all of Section * * * 179 in Blk. * * * (3), H. & G. N. Ry. Co. Survey, surveyed by virtue of certificate No. 9/1825 located in Scurry County, Texas, less the right of way heretofore conveyed and condemned for the purposes of the R. S. & P. Ry. Co. and the P. & N. T. Ry. Co.," and that said McLeans were each entitled to a one-third interest therein.

(The railroad rights of way in controversy were acquired by condemnation only.)

The order appointing commissioners found that J. E. McLean and wife had been the owners in fee simple of all of Section 179, describing it; that William Joseph McLean and his brother and sister were entitled to an undivided one-third interest each in fee simple in said "Section 179, Blk. No. #3, H. G. N. Ry. Co. Survey located by virtue of certificate 9/1825 located in Scurry County, Texas, on account of being the only surviving heirs of said Joe E. McLean and Lela McLean, deceased, which said section of land consists of 640 acres of land *less that portion occupied by the right of way* of the Roscoe, Snyder & Pacific Railway Company and the Pecos and Northern Texas Railway Company consisting of about 36.54 acres of land," and that said "section of land" was susceptible of partition in kind and that said W. J. McLean and his brother and sister were the only surviving heirs of J. E. McLean and wife, and "are the owners in fee simple of an undivided one-third interest each in and to said section No. 179, Blk. No. 3, H. & G. N. Ry. Co. Survey, conveyed by virtue of certificate No. 9/1825, situated in Scurry County, Texas," and that they were entitled to partition said land in kind and that each tract should be of the same value.

The report of the Commissioners appointed to partition said section is as follows:

"1st. We partition to the defendant Milton Bryan McLean * * * the south portion of said section No. 179, Blk. No. 3, surveyed by virtue of certificate No. 9/1825, issued to the H. & G. N. Ry. Co. situated in Scurry County, Texas, described by metes and bounds as follows, to-wit:

"Beginning at the southeast corner of said section;

"Thence North along the east line of same 561.30 varas;

"Thence West parallel with the south line of said section 1900 varas to the west line of same;

"Thence south along the west line of said section 561.30 varas to the southwest corner of said section;

"Thence east along the south line of said section to the place of beginning, containing 178 acres of land more or less.

"2nd. To the defendant Annie Thelma McLean * . * *, we partition the middle portion of said section No. 179, Blk. 3, surveyed by virtue of certificate No. 9/1825, issued to the H & G N Ry. Co. situated in Scurry County, Texas, and described by metes · and bounds as follows, to-wit:

"Beginning 561.30 varas north from the southeast corner of said section No. 179;

"Thence North along the east line of said section 561.30 varas;

"Thence West parallel with the south line of said section 1900 varas;

"Thence South along the west line of said section No. 179, 561.30 varas;

"Thence East parallel with the south line of said section 1900 varas to the place of beginning, containing 178 acres of land more or less.

"3rd. To the plaintiff William. Joseph McLean, we partition the north portion of said Section No. 179, Blk. No. 3, surveyed by virtue of certificate No. 9/1825, issued to the H. & G. N. Ry. Co. situated in Scurry County, Texas, and described by metes, and bounds, as follows, to-wit:

"Beginning 1122.60 varas north from the southeast corner of said Section No. 179;

"Thence north along the east line of said section 777.40 varas to the northeast corner of said section 179;

"Thence West along the north line of said section 1900 varas to the northwest corner of same;

"Thence south along the west line of said section 777.40 varas;

"Thence east parallel with the north line of said section 1900 varas, to the place of beginning, containing 246.46 acres of land more or less.

"The above said land includes all of said Section 179, Blk. No. 3, surveyed by virtue of certificate No. 9/1825, issued to the H & G N Ry. Co., Scurry County, Texas, save and except 36.54 acres of land heretofore conveyed to the Roscoe, Snyder & Pacific Railway Company, and the Pecos and Northern Texas Railway Company, and that *occupied by the public road* passing along the east and north side of the Pecos and Northern Texas *Railway Right of Way.*

"We append hereto a plat of said property as partitioned by us, and ask that the same be taken as a part hereof."

Said plat shows the rights of way across the entire section but it does not show their size, nor the number of acres covered by any of the easements. It shows the number of acres allotted each McLean as stated heretofore. Unless such statement as to the number of acres of land allotted each child, exclusive of rights of way, shows that the land and minerals, over which there existed three easements, was not partitioned, neither the plat, report, nor judgment indicate that anything was left unpartitioned but, on the contrary, shows the entire north end of the section was partitioned to J. W. McLean, the middle to his sister and the south end to his brother, subject to said easements.

The partition judgment recites:

"* * * it appearing to the court that said commissioners have awarded the north portion of said section 179, Blk. No. 3, surveyed by virtue of certificate No. 9/1825, issued to the H. & G. N. Ry. Co, Survey, situated in Scurry County, Texas, including 246.46 acres of land more or less, to William Joseph McLean; and have awarded the middle portion of said section No. 179, including 178 acres of land more or less

to Annie Thelma McLean, a minor, and have awarded the south portion of said section No. 179, including 178 acres of land more or less to Milton Bryan McLean, a minor, and for a more particular description of each of said tracts of land reference is hereby made to the report of said commissioners which is filed in this case, and shall be taken as part of this judgment.

"It is therefore ordered, adjudged and decreed by the court that the plaintiff William Joseph McLean do have and recover from the defendants Milton Bryan and Annie Thelma McLean, minors, the north portion of said section No. 179, Blk. 3, survey by virtue of certificate No. 9/1825 issued to the H. & G. N. Ry. Co. situated in Scurry County, Texas, including 246.-46 acres of land more or less; It is further ordered that the defendant Annie Thelma McLean, a minor, do have and recover of and from the Plaintiff William Joseph McLean and the defendant Milton Bryan McLean, a minor, as her portion of said above described section No. 179, the middle portion containing 178 acres of land more or less; It is further ordered that the defendant Milton Bryan McLean, a minor, do have and recover of and from the Plaintiff William Joseph McLean and the defendant Annie Thelma McLean, a minor the south portion of said section No. 179, including 178 acres of land more or less, and for a more particular description of each of the tracts of land awarded to Plaintiff and defendants reference is hereby made to the report of the Commissioners made in this cause which shall be taken and made as a part of this judgment * * *."

Article 6100 provides: "The decree of the court confirming the report of the commissioners in partition * * * shall vest the title in each party to whom a share has been allotted, to such share as against the other parties to such partition suit * * *

as fully and effectually as the deed to such parties could vest the same, and shall have the same force and effect as a full warranty deed of conveyance from such other parties and each of them."

In O'Conor v. Sanchez, Tex.Com.App., 229 S.W. 309, 311, the court said:

"We concur in the holding of the Court of Civil Appeals that a decree of partition, such as was entered in this case, creates under the provisions of the foregoing statute a warranty of title similar to a general warranty expressed in a deed. Harn v. Phelps, 65 Tex. 592; Bigham v. Bigham, 57 Tex. 238."

"The decree is prima facie proof that a part owner has title to the land allotted to him." 32 Tex.Jur. 202.

The effect of a partition judgment is the same as if the partition had been accomplished by deeds. Reed v. Robertson, Tex.Sup., 156 S.W. 196, 197. In the absence of a showing of a contrary intention, it should be presumed that in the partition of a section of land between three heirs, where one is awarded the north end, another the middle and the third the south end of the section, that it was intended to partition the entire section and not to leave unpartitioned a strip 260 feet wide, angling near the middle across the entire section. Where a tract of land is partitioned among the joint owners a presumption exists that the whole of said land was intended to be partitioned, unless some portion is expressly excepted. Gulf Production Co. v. Baton, Tex.Civ.App., 108 S.W.2d 960, 966 (Writ Ref.); Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 1087, 85 A.L.R. 391; Stephenson v. Mitchell, Tex.Civ.App., 205 S.W.2d 625, 628. See also 32 Tex.Jur. 203; Frazier v. Hanlon Gasoline Co., Tex. Civ.App., 29 S.W.2d 461, 469 (Writ Ref.); 14 Tex.Jur., 558; Art. 3613. W. J. McLean, in his deed to Grabow, stated that the entire section had been partitioned. The presumption that the entire tract was intended to be partitioned in a judgment is,

at least, similar to the presumption that the grantor in a deed intended to convey all of a tract of land and not to reserve a narrow strip.

█ In Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977, 980, our Supreme Court said:

"(c) An instrument of conveyance which conveys land definitely described in such instrument, and then excepts from such conveyance a road, railroad right of way, canal right of way, etc., as such, occupying a mere easement on, over, or across the land conveyed, conveys the fee to the entire tract, and the exception only operates to render the conveyance or grant subject to the easement."

The partition proceedings show an intention to award to W. J. McLean all of the north end of Section 179, including the land and minerals in the 260 foot strip in controversy, subject to the three easements, unless the statements in the Commissioners' report that the land partitioned to him contained "246.46 acres of land, more or less," and that tracts allotted the other heirs each contained "178 acres of land, more or less" and the paragraph immediately following paragraph three show a contrary intention. Said paragraph reads:

"The above land includes all of said Section No. 179, Blk. No. 3, Surveyed by virtue of certificate No. 9/1825, issued to the H & G N Ry. Co., Scurry County, Texas, save and except 36.54 acres of land heretofore conveyed to the Roscoe, Snyder and Pacific Railway Company and the Pecos and Northern Texas Railway Company, and that *occupied by* *the public road* passing along the east and north side of the Pecos and Northern Texas Railway *Right of Way.*"

Here we should remember that the particular railway rights of way in controversy were not conveyed but condemned and that the railway companies did not thereby acquire any title to the minerals and, also,

that no title to minerals was acquired by using the 60 foot county road.

. The metes and bounds description of the three tracts partitioned covers the entire section. The calls for W. J. McLean's land are for all the land between the east and west boundary lines of Section 179 and from the north boundary line of said section south to the north line of the tract partitioned to his sister. Although the calls cross and re-cross said easement boundaries, no mention is made thereof. The 36.54 acres referred to in the last quotation was the land over which said railroads and the public had only easements. The plat attached to the Commissioners' report does not show an exclusion thereof.

As shown in Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977, 980; in Bolton v. Dyck Oil Co., Tex.Civ.App., 114 S.W.2d 299, (W.D.), a deed describing a tract by metes and bounds, the last call being " 'Thence eastward with said R. R. 709 vrs. to place of beginning, containing 87 acres after deducting the right of way of said H. & O. RR' ", was held to convey the land burdened with a right of way easement and not to except any land. In Penn v. Holland, Tex.Civ.App., 105 S.W. 2d 351, 353, (W.R.), a deed which, at the conclusion of the description, recited "containing * * * 37.2 acres of land * * * save and except three (3) acres of land out of said tract, the same having been conveyed by me to the * * * Railway Company", did not except three acres of land but conveyed the three acres, subject to an existing easement. In Shell Petroleum Corporation v. Ward, 5 Cir., 100 F.2d 778, suit was for the title to 5.6 acres occupied by a right of way conveyed to a Canal Company. The land, across which said right of way had been granted, was conveyed by a metes and bounds description which included the 5.6 acres. At the conclusion of the field notes was the recitation: "Containing 162.00 acres of land save and except therefrom 5.6 acres taken up by the right of way * * * making 156.4 acres herein and hereby conveyed." It was held that the 5.6 acres of land were not excepted but were conveyed, subject to the easement.

■ Applying said rules and decisions to the partition decree and the deed from W. J. McLean to A. F. Grabow, it is evident that the land and minerals in the 260 foot strip in controversy were partitioned to W. J. McLean, subject to the existing easements, and that he conveyed to Grabow the fee title to the soil and minerals therein, subject to said easements. McLean's deed to Grabow described by metes and bounds all of the north part of Section 179; McLean recited therein that the entire section had been partitioned and that he conveyed all the land received by him in said partition. The only thing excepted was right of way easements. If the partition decree had been ambiguous, and it was not, then W. J. McLean, by said deed, construed it as a partition of all the section. We conclude that the north end of the section, including the land and minerals in the 260 feet in controversy, was partitioned to W. J. McLean and that he conveyed the same to Grabow. See Cities Service, Oil Co. v. Dunlap, 5 Cir., 100 F.2d 294, 296.

We hold, as a matter of law, (1) that the 260 foot strip was partitioned by the McLeans, subject to the easements and (2) that W. J. McLean, to whom the strip was partitioned, conveyed it to Grabow, subject to the easements. The matter in issue in the McLean partition suit was the partition of the entire section, subject to the easements. It is apparent from the record that the number of acres, more or less, stated to be allotted to each of the McLeans in said partition was intended as a statement of the number of acres free of the easements.

In Texas Bitulithic Co. v. Warwick, Tex. Com.App., 293 S.W. 160, 164, the court said:

"As a rule, deeds do not describe property beyond the bounds where the grantee has exclusive rights. For that reason, no mention is generally made of adjoining sidewalks and streets, where the public generally has concurrent rights and control."

■ The only interest the railroad companies had in the west 200 feet of the 260 foot strip in controversy was acquired by condemnation. They acquired only easements for railroad purposes. Art. 6339; Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Tex. 94, 157 S. W. 737, 739, 51 L.R.A.,N.S.; 268; Thompson v. Janes, Tex.Sup., 251 S.W.2d 953, 955; Texas Electric Ry. Co. v. Neale, Tex.Sup., 252 S.W.2d 451, 457. The prescriptive right to use the 60 foot county road was merely an easement. No title was thereby acquired to the minerals. Humble Oil & Refining Co. v. Wagener, Tex.Civ.App., 19 S.W.2d 457, 459 (W.D.). When the Roscoe Railway took up its tracks and abandoned the use of the 100 feet which was part of the west side of said 260 foot strip, the then owner of the minerals in said 100 foot strip was thereby simply freed of the burden of said easement. Abandonment of the easement by the Roscoe Railway did not affect the title of the then owner of the minerals under said right of way. In Mitchell v. Bass, 26 Tex. 372, 380, the court said:

"The established doctrine of the common law is that a conveyance of land bounded on a public highway carries with it the fee to the center of the road as part and parcel of the grant. Such is the legal construction of the grant, unless the inference that it was so intended is rebutted by the express terms of the grant. The owners of the land on each side go to the center of the road, and they have the exclusive right to the soil, subject to the right of passage in the public. Upon the discontinuance of the highway, the soil and freehold revert to the owner of the land." See also 21 Tex.Jur., 627 and Neil v. Independent Realty Co., 317 Mo. 1235, 298 S.W. 363, 70 A.L.R. 564.

■ Defendants contend plaintiffs cannot maintain their suit in trespass to try title because they have no present right to possession of the minerals in the land over which the easements exist; that the possession of a right of way by a railroad is exclusive and deprives the fee owner of all right of possession. This could not apply.

to the abandoned right of way. This suit involved the title to the minerals only in the 260 foot strip. The only possible effect of the easements, after abandonment of the Roscoe Railway right of way easement, on the title to the oil under the 260 feet and the right to its possession would be to prevent the owners of the oil from so using that part of the surface over which the remaining easements still existed as to interfere with the use of said rights of way for the purpose for which they were acquired. The then owner of the soil and minerals under the west 100 feet of the strip then had a right to drill thereon and to drain oil from beneath all the land owned by them. Certainly, with modern methods of directional drilling, the owners could extract the oil without interfering with the rights of the easement owners to pass over the surface. If the Haines plaintiffs own any part of the minerals under the abandoned Roscoe Railway right of way, they can drill on their part and drain oil from beneath all the strip they own. If the Boothe plaintiffs own the minerals under the east half of the 60 foot county road they can drill from their adjoining land and drain their oil from under the road without interfering with those having the right to travel over it. Calvert v. Harris County, Tex.Civ.App., 46 S.W.2d 375, 376 (Writ Ref.).

In Cocke v. Texas & N. O. R. Co., 46 Tex. Civ.App. 363, 103 S.W. 407, 408 (Writ Ref.), the court said:

"* * * owners of the fee in said street, could maintain an action of trespass to recover the title and possession against a trespasser in possession thereof. The deeds conveying the blocks on each side of the street to defendants in error put the title to the fee in the street in them. Mitchell v. Bass, 26 Tex. [372] 380; Day v. Chambers, 62 Tex. [190] 192. Being the owner of the fee, we can see no reason for denying them the right to protect their title by suit against any one claiming and holding the property adversely to them."

In Thompson on Real Property, vol. 1, page 90, is this statement:

"* *. * the owner of the adjacent land on either side of the street, owns the minerals beneath, and he may mine underneath such highway, provided he does not thereby interfere with its use as a highway." Citing City of Leadville v. Bohn Mining Co., 37 Colo. 248, 86 P. 1038, 8 L.R.A.,N.S., 422, 11 Ann. Cas. 443, and Wright v. Austin, 143 Cal. 236, 76 P. 1023, 65 L.R.A. 949, 101 Am.St.Rep. 97."

In Lewis, Eminent Domain, vol. 2, (3d Ed.) page 1268, is this statement:

"When an easement is taken for a Railroad or other public use, the owner of the fee retains title to the minerals with the right to remove them, subject to the right of support for the railroad or whatever may be put upon the land, and to the right of exclusive use of the surface." See also Thurber v. Conners, 57 Tex. 96; Ladies' Benev. Soc. of Beaumont v. Magnolia Cemetery Co., Tex.Com.App., 288 S.W. 812; Texas-Louisiana Power Co. v. Webster, Tex. Civ.App., 59 S.W.2d 902, affirmed 127 Tex. 126, 91 S.W.2d 302; Kelsay v. Lone Star Gas Co., Tex.Civ.App., 296 S.W. 954 (W.Dis.); 15 Tex.Jur. 29; Uvalde Rock Asphalt Co. v. Asphalt Belt Ry. Co., Tex.Com.App., 267 S.W. 688.

The Boothe plaintiffs established title to some portion of the east side of the 260 foot strip, unless (1) said strip was excluded from the partition between the McLeans, or (2) reserved in W. J. McLean's deed to A. F. Grabow, provided Grabow's deed to Yoder had the effect of conveying part of the easement strip.

In November, 1924, William J. McLean and wife executed a deed to A. F. Grabow which recited that they:

"* * * have bargained, granted, Sold and Conveyed and by these presents do Grant, Sell and Convey unto

the said A. F. Grabow his heirs and assigns all of that certain tract or parcel of land situated in Scurry County, Texas, and being out of the part of Survey * * * (179) in Block number three made by virtue of certificate No. 9/1825 issued to the Houston and Great Northern Railroad Company by patent No. 248, Volume No. 66 and more particularly described as follows, viz.:

" 'Beginning at N. E. corner of said survey at a mound and four pits; Thence West with north line in said survey 1900 varas to the N. W. corner of same at a mound. Thence South with west line of said survey 777–1 varas to corner of 178 acres set apart to Thelma McLean in partition of said 640 acres; Thence East with north line of said Thelma * * * tract 1900 varas corner in East line of said 640 acres survey being N. E. corner of Thelma McLean 178 acre tract; Thence North with East line of said survey 777–1 varas to beginning and containing an area of 246.6 acres of land *exclusive* of *right of way of Railway and Highways* which is excepted from this conveyance, said right of way having been heretofore conveyed, the above tract of land being the same which was set apart to me *in partition of said 640 acres* which said partition is of record in Scurry County and is hereby referred to and made a part hereof for all available and pertinent purposes, I hereby conveying all of the land conveyed to me in such partition."

The habendum clause was that customary in warranty deeds.

In 1929, Grabow and wife conveyed to D. P. Yoder a tract out of the northeast corner of Section 179. All subsequent conveyances in the Boothe plaintiffs' chain of title described this tract as it was described in Grabow's deed to Yoder. The granting clause and description therein being as follows:

. "* * * have Granted, Sold and Conveyd, and by these presents do

Grant, Sell and Convey, unto the said D. P. Yoder of the County of Scurry State of Texas all that certain lot, tract or parcel of land situate and lying in the County of Scurry and the State of Texas and being 127.8 acres out of the Northeast part of Section 179, Block Three of the H. & G. N. Ry. Company Survey, Cert. 9/1813 and more fully described by metes and bounds as follows:

"Beginning at: A stake in the Center of Public Highway, the original northeast corner of said Section;

"Thence West with the North line of said Section 1065 varas to an iron pipe driven in the East line of Highway No. 7, the Northwest Corner of this Tract;

"Thence South 20 deg. East along the east side of said Highway a distance of 910 varas to an iron pipe for the Southwest Corner of this Tract;

"Thence East 695 varas to a point in the center of Highway No. 101;

"Thence North 832 varas with the east line of this section to the place of beginning * * *."

The call West to a pipe in the East line of Highway 7 and then South along the East side of Highway 7 was unquestionably a call for the east side of the 60 foot county road on the east side of the 260 foot strip, which was then Highway 7.

In Couch v. Texas & Pacific Ry. Co., 99 Tex. 464, 90 S.W. 860, 861, the court said:

"At the time the deed from Couch to Norton and McGown was made Couch owned the land on both sides of the railroad, and after the sale the entire right of way remained in connection with his land south of the railroad. Under this state of facts there is no ground for a presumption that Couch intended to convey that portion which lay between the line described in the deed and the railroad track."

■ Under said decision, it would appear that because Grabow's deed called for the east side of the 60 foot county road as the western boundary of Yoder's land and Grabow retained the remainder of the tract to the west that the presumption that Grabow intended to also convey the fee to the east one-half of said road would not apply. But, since the Couch decision, under a fact situation that cannot be distinguished from those of the present case, our Supreme Court has held that the presumption does apply, despite the fact that the grantor who owned on both sides of a right of way conveyed the land on one side and retained that on the other, unless the right of way was expressly reserved in the deed. Mrs. Haines also failed to except the adjoining railway right of way in her deed to Scurry County. Therefore, her grant is conclusively presumed to go to the center of the adjoining right of way. Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 1087, 85 A.L.R. 391; Cox v. Campbell, 135 Tex. 428, 143 S.W.2d 361, 363.

In Cox v. Campbell, where the grantor had owned land on both sides of a right of way and conveyed that on one side only, 143 S.W.2d at page 366, the court said:

"The rule has been definitely announced in the Warwick and Weed cases that where a deed conveys by specific field notes land abutting on a street or public highway or railroad right of way, it conveys title to the property to the center of the street, public highway, or railroad right of way; and such rule is not overcome even though the field notes describing the land stop at the side line of the street, public highway, or railroad right of way, unless a contrary intention is expressed in plain and unequivocal terms."

In Joslin v. State, Tex.Civ.App., 146 S.W.2d 208, 211 (Writ Ref.) the court said:

"While the intention of the parties to a grant, where ascertainable, generally controls, the following significant

language is used in the Rio Bravo case (121 Tex. 427, 50 S.W.2d 1087, 85 A.L.R. 391): 'The prime object and purpose of such rules (of construction) is to enable them to ascertain and give effect to the true intention of the parties *unless such intention is inconsistent with* some settled rule of law.' (Italics ours.) And the settled rule of law therein announced and followed in Cox v. Campbell, supra, is that, absent an express reservation, the grant is conclusively presumed to go to the center of the nonnavigable stream, highway or railroad right of way. There being no such reservation in the grant, under such rule of construction, other evidence as to what was the intention of the parties becomes unimportant." See also Goldsmith v. Humble Oil & Refining Co., 145 Tex. 549, 199 S.W. 2d 773 and Texas Bitulithic Co. v. Warwick, Tex.Com.App., 293 S.W. 160, 164.

■ Our Supreme Court has held that the presumption of an intention to convey to the center of an adjoining easement applies notwithstanding the fact that grantor owned on both sides of the easement and conveyed the land on one side only by a description that called for the grant to stop at the outer edge of the easement. Therefore, Grabow's deed to Yoder conveyed the fee to the east one-half of the 60 foot county road, subject to the easement thereon. Under said rule, which was emphasized in Joslin v. State, supra, wherein a writ of error was refused, it necessarily follows that if Mrs. Haines' deed to Scurry County conveyed the land, not an easement, Scurry County acquired, as a part and parcel of its grant, the fee to the west one-half of the 100 foot strip over which the Roscoe Railway had a right of way, subject to said easement. The rule is that when a grantor executes a deed to land which adjoins an easement, he conveys also the title to his adjoining land to the center of the adjoining easement, if the grantor owns that far, unless the grantor expressly reserves said

land over which there is an. easement. If the easement is along the margin of grantor's land, so that he owns no land beyond that covered by the right of way easement, his deed conveys all the land over which the easement exists, in the absence of an express reservation. See also Mitchell v. Bass, 26 Tex. 372, 380; 21 Tex.Jur. 627 and 70 A.L.R. 564.

■ By inheritance and by deed, in February, 1932, Mrs. Haines acquired title to all the north end of Section 179, except that part conveyed by her father, A. F. Grabow, to Yoder, subject only to the easements across the east end of her property. She owned the soil and minerals in the 260 feet, over which there were three easements, except the east 30 feet, which, under said rule, was conveyed by her father to Yoder as a part and parcel of that grant. The easement owners merely had the right to travel over said 260 feet of land but Mrs. Haines owned the minerals in the western 230 feet of said land. Likewise, the easement over the east one-half of the 60 foot county road did not prevent Yoder and his assigns from owning the minerals thereunder. In August, 1932, Mrs. Haines executed a deed to Scurry County to a 100 foot strip adjoining on the west the 100 feet over which the Roscoe Railway had an easement. It was in the form of a general warranty deed. The granting clause conveyed to Scurry County "a piece of real estate off of the east side of a certain 119 acre tract of land in Section 179, Block 3, H. & G. N. Ry. Co. Survey, Scurry County, which farm is commonly known as the A. F. Grabow place, said strip of land here conveyed being across the entire east side of said place, adjacent to the R. S. & P. Right of Way * * * said 100 foot strip of land is described by metes and bounds as follows: * * *." There followed a description of the land conveyed showing that its east boundary was the same as the West line of the 100 feet over which the Roscoe Railway had a right of way easement. This 100 feet was owned by Mrs. Haines. She did not reserve the land covered by the adjoining easement. The paragraph next to the habendum clause, which

clause was in the usual form of a warranty deed, reads as follows:

"It is further specifically agreed that this conveyance is in the nature of a donation, for highway purposes only, and if at any time in the future said highway shall be abandoned, or in the event the property here conveyed ceases to be used for highway purposes, it shall revert to grantors, their heirs and assigns."

Said deed conveyed, at least, a determinable fee, not a mere easement. Under the decision of our Supreme Court in Davis v. Skipper, 125 Tex. 364, 83 S.W.2d 318, 320, the estate conveyed is a fee. The nature of such fee is stated therein as follows:

" 'Until its determination such an estate has all the incidents of a fee simple, and while this estate continues, and until the qualification upon which it is limited is at an end, the grantee or proprietor has the same rights and privileges over his estate as if it was a fee simple. He has an absolute right to the exclusive possession, use and enjoyment of the land and as complete dominion over it for all purposes as though he held it in fee simple.' "

The Supreme Court said that it followed:

" * * * that the grantee under such a deed as is involved here may use the land to the extent of producing the oil and gas therefrom, and, conversely, the holder of a mere possibility of reverter has no such estate as authorizes him to maintain an injunction to prevent such use of the land."

■ The declaration in Mrs. Haines' deed to Scurry County of the purpose for which the land was conveyed did not impose a condition upon the title granted nor limit the grant to a mere easement. Texas Electric Ry. Co. v. Neale, Tex.Sup., 252 S.W.2d 451, 456. In Stanbery v. Wallace, Tex.Com.App., 45 S.W.2d 198, 199, it was held that where the granting clause conveys the fee, subsequent recitals limiting

the use of the land do not restrict the conveyance to an easement. See also Texas Conservative Oil Co. v. Thompson, Tex.Civ.App., 163 S.W.2d 854 (Writ ref.); Stevens v. Galveston, H. & S. A. Ry. Co., Tex.Com.App., 212 S.W. 639; Ryan v. Porter, 61 Tex. 106; 27 Tex.Law Rev. 162; Texas & Pacific Ry. Co. v. Martin, 123 Tex. 383, 71 S.W.2d 867, 869; Kassner v. Alexander Drug Co., 194 Okl. 36, 147 P.2d 979, 981; Cooper v. Selig, 48 Cal.App. 228, 191 P. 983; Las Posas Water Co. v. Ventura County, 97 Cal.App. 296, 275 P. 817.

The rule emphasized in Joslin v. State, supra, that in the absence of a reservation in a deed, it is conclusively presumed the grantor intended to convey to the center of an adjoining easement compels the conclusion that Scurry County acquired the west 50 feet of the 100 feet over which the Roscoe Railway had an easement. But this was not the margin of Mrs. Haines' land and she did not lose the land lying east thereof and extending to the Boothe plaintiffs' east 30 feet of the county road. The minerals underlying the remainder of the 260 foot strip has not been conveyed by Mrs. Haines and is still owned by her. In this connection, see 11 C.J.S., Boundaries, §§ 35, 45, pp. 587, 594; Pennsylvania R. Co. v. Ayres, 50 N.J.L. 660, 14 A. 901; McGee v. Swearengen, 194 Ark. 735, 109 S.W.2d 444, 448; Geddes Coarse Salt Co. v. Niagara, Lockport & Ontario Power Co., 207 N.Y. 500, 101 N.E. 456; Anderson-Prichard Oil Corp. v. Key Okla Oil Co., 149 Okl. 262, 299 P. 850; State v. Arnim, Tex.Civ.App., 173 S.W.2d 503, 508 (R.W.M.); 8 Am.Jur., Sec. 49, page 781. The minerals underlying the east half of the land occupied by the Roscoe Railway was not lost to Mrs. Haines by abandonment of that easement. She and Scurry County, or those acquiring the west one-half thereof from Scurry County, by said abandonment were simply relieved of the burden of the easement. 14 Tex.Jur. 734; 28 C.J.S., Easements, § 65, p. 732; 70 A.L.R. 565.

W. J. McLean conveyed all the minerals in controversy to Grabow. The Haines plaintiffs proved they owned the title to the minerals in that part of the 260 foot strip lying between the east one-half of the 60 foot county road, conveyed by Grabow to Yoder, and the west one-half of the 100 foot strip over which the Roscoe Railway formerly owned a right of way easement, conveyed by Mrs. Haines to Scurry County, unless, as defendants contend, Mrs. Haines is estopped to claim ownership of land and minerals east of the western edge of Highway 84 by the fact that there are of record quitclaim deeds from Milton and Annie McLean, which, by their description of the land, place Mrs. Haines' eastern boundary on the western edge of Highway 84, or Warren is estopped to claim that its lease covers any part of the strip in controversy because it filed a map with the Railroad Commission which showed the eastern boundary of its lease to be west of Highway 84. If Mrs. Haines owns said minerals and is not estopped she should recover her title regardless of whether Warren recovers the leasehold on said portion of the 260 feet.

The deed to Mrs. Haines in 1932, her lease to Casebolt in 1948 and the assignment thereof to Warren, all describe her land as follows:

"* * * all that certain tract or parcel of land situated in Scurry County, Texas, and being out of the North part of Survey No. 179 in Block No. 3 made by virtue of certificate No. 9/1825 issued to the Houston & Great Northern Railway Company by patent No. 248 Volume No. 66 and more particularly described as follows, to-wit:

"Beginning at the NE corner of said Survey at a mound and four pits;

"Thence W with the N line of said survey 1900 vrs to the NW corner of same at a mound;

"Thence S with the W line of said survey 777-1 vrs to the corner of 178 acres set apart to Thelma McLean in partition of said 640 acres;

"Thence E with N line of said Thelma McLean tract, 1900 vrs in E line

of said 640 acre survey, being NE corner of Thelma McLean 178 acre tract;

"Thence N with E line of said survey 777-1 vrs to the beginning, containing an area of 246.6 acres of land *exclusive of right of way of RR and Highways* which is excepted from this conveyance; and being the same tract of land conveyed to A. F. Grabow by William J. McLean and Mary McLean by Deed dated 29th of November, 1924 and recorded in Volume 51 page 363 Deed Records of Scurry County, Texas, said deed by book, volume and page of said Record Book being here referred to and made a part hereof for description of said tract of land.

"There is excepted, however, from said tract of land and this conveyance 127.8 acres of land heretofore conveyed out of same by A. F. Grabow to D. P. Yoder by Deed dated February 6th, 1929 and of record in the Deed Records of Scurry County, Texas, said Deed being referred for description of land excepted herefrom."

There was no ambiguity in the description of the land in the Haines plaintiffs' chain of title to that part of the 260 foot strip lying between the east 30 feet and the west 50 feet thereof and evidence to explain a supposed ambiguity was not admissible. The Boothe plaintiffs were entitled, as a matter of law, to a judgment awarding them the title and possession of the minerals under the east 30 feet of the 260 foot strip, subject to the roadway easement. The Haines plaintiffs were entitled to a judgment awarding them the title and possession of the minerals lying between the 30 feet conveyed to Yoder and the 50 feet conveyed to Scurry County, subject to said roadway easement and the Santa Fe Railway right of way easement, unless the Haines plaintiffs are estopped to prove that the eastern boundary of their land does not stop at the west side of Highway 84. The trial court held that the Haines plaintiffs were estopped to claim title to any minerals east of Highway 84 because said quitclaim deeds were on record and

Warren Petroleum Corporation had filed with the Railroad Commission a map which showed the same eastern boundary of its lease. There was no evidence of a bona fide dispute as to said boundary line. The evidence did not show an agreed boundary line. There was no evidence as to the purpose of executing said quitclaim deeds. No witnesses testified that they were solicited by Mrs. Haines or delivered to her or that she had them recorded. They were introduced by defendants with the statement that the purpose of their introduction was to show a practical construction of the parties as to the location of Mrs. Haines' eastern boundary line because there was an ambiguity in the description thereof in Haines lease to Casebolt, which lease was assigned to Warren. Defendants contended that because Mrs. Haines' lease contained the plural, "highways," in the statement "exclusive of Railroad and Highways" that this created an ambiguity. This description was merely copied from the description of her land throughout her chain of title from the time W. J. McLean so described it in his deed to Mrs. Haines' father, long before Highway 84 came into existence. This was not reasonably calculated to mislead any one. There was no ambiguity. It was simply a conveyance of the entire tract described "and the exception only operates to render the conveyance * * * subject to the easement." Lewis v. East Texas Finance Co., supra [136 Tex. 149, 146 S.W.2d 980]. That lease described the land as follows:

"* * * the following described land in Scurry County, Texas, to-wit:

"Being out of the North part of Survey No. 179 in Block No. 3 made by virtue of Certificate No. 9/1825 issued to the Houston & Great Northern Railway Company by patent No. 248 Volume No. 66 and more particularly described as follows, to-wit:

"Beginning at the NE corner of said Survey at a mound and four pits;

"Thence W with the N line of said survey 1900 vrs. to the NW corner of same at a mound;

"Thence S with the W line of said survey 777–1 vrs to the corner of 178 acres set apart to Thelma McLean in partition of said 640 acres;

"Thence E with N line of said Thelma McLean tract, 1900 vrs in E. line of said 640 acre survey, being NE corner of Thelma McLean 178 acre tract;

"Thence N with E. line of said survey 777–1 vrs to the beginning, containing an area of 246.6 acres of land *exclusive of right of way of RR and Highways* which is excepted from this conveyance; and being the same tract of land conveyed to A. F. Grabow by William J. McLean and Mary McLean by Deed dated 29th of November 1924 and recorded in Volume 51, page 363 Deed Records of Scurry County, Texas, said deed by book, volume and page of said Record book being here referred to and made a part hereof for description of said tract of land.

"There is excepted, however, from said tract of land and this oil and gas lease 127.8 acres of land heretofore conveyed out of same by A. F. Grabow to D. P. Yoder by Deed dated February 6th, 1929 and of record in the Deed Records of Scurry County, Texas, said Deed being referred for description of land excepted herefrom and containing 119 acres, more or less."

■ Defendants introduced, over plaintiffs' objection, the plat filed by Warren and its letter, dated March 6, 1952, to E. L. Wilson. The letter explained that the person who drew and filed the map for Warren with the Railroad Commission was confused as to the eastern boundary of Mrs. Haines' land because the 60 foot county road, which is the east side of the land in controversy, was taken over by the Highway Department and called Highway 7 and, thereafter, the Highway Department abandoned said road and built a highway across the 100 foot strip conveyed by Mrs. Haines to Scurry County, west of the land in controversy, and for a time called it Highway 7. The latter road is now High-

way 84. There is no ambiguity in the description of the land conveyed in the instruments under which plaintiffs claim, therefore, extraneous evidence was not admissible to vary its description. Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W. 2d 977, 980. See also Joslin v. State, Tex. Civ.App., 146 S.W.2d 208, 211 (W.R.).

■ However, if said instruments had been admissible, under the record, they were insufficient to constitute an estoppel to claim minerals east of Highway 84. There is no evidence tending to show that said map was intended as a practical construction of the parties of the location of Haines' eastern boundary. The map was filed only for the purpose of securing Warren's "allowable" production under the Haines lease and was a representation to the Railroad Commission as to the land Warren wanted included in a production unit for "allowable" purposes. Mr. E. L. Wilson and others, who assert estoppel, drilled wells north of Section 179 and, in obtaining their "allowable" from the Railroad Commission, included the abandoned right of way of the Roscoe Railway as a part of their lease. The lease to Wilson, et al., was executed by Reef Oil Corporation, Reef having obtained a mineral deed from the Roscoe Railway in February, 1950. The Roscoe Railway owned no minerals in Section 179 and Wilson, et al., therefore, acquired no interest in Section 179 by its lease. Wilson, et al., claim they would not have drilled "doubtful" well Number 2 north of Section 179, had Warren's map not been filed. Mr. Wilson testified that they claimed the old Roscoe Railway right of way as a part of their lease (for the purpose of obtaining their "allowable" production), because said map showed the eastern boundary of the Haines lease to be west of Highway 84, nevertheless, he admitted that they claimed said right of way before he saw the map. He admitted that they had the title to said right of way examined when they got the lease from Reef and knew that the Roscoe Railway acquired all the rights it had in Section 179 by virtue of the Railway company's suit to condemn the land; that Warren protested their ap-

plication to drill their first well and that he never made any investigation of Warren's claim. In any event, neither the Boothe plaintiffs nor Mrs. Haines could be estopped by the acts of Warren because they were not shown to have any knowledge thereof.

Mr. Wilson's testimony was with reference to hearings before the Railroad Commission concerning permits granted them to drill wells in a different section. The permits made no reference to the land in controversy, nor to Section 179. As we understand the matter, in granting said permits the Commission was only deciding the right of Wilson, et al., to drill at the sites selected by them on their own land and was not then attempting to decide what land they might include in fixing their "allowable," if and when production was later obtained. Under the circumstances, we think Warren had no duty to tell Wilson, et al., that it was claiming a lease on the land in controversy. Warren's lease called for it. It was on record. Inaction does not ordinarily create estoppel. Plaintiffs made no misleading verbal statements to them. The record does not show conduct or statements by either Warren or the Haines which were reasonably calculated to mislead Wilson, et al., and those claimed to have been relied on are insufficient as a basis of estoppel. Harrison v. Manvel Oil Co., 142 Tex. 669, 180 S.W.2d 909, 918; 17 Tex.Jur. 144.

As to the west 50 feet of the 260 feet in controversy the judgment is affirmed. The judgment is reversed and judgment rendered awarding the Boothe plaintiffs title and possession, subject to the roadway easement, of the east 30 feet. Subject to the Panhandle & Santa Fe Railway right of way easement and said roadway easement, the Haines plaintiffs are awarded title and possession of all the minerals in the land between said 50 feet and 30 feet mentioned above. (Except where otherwise shown, italics are those of the Court).

Affirmed in part and reversed and judgment rendered in part.

The opinion dated January 22, 1954 is withdrawn and this opinion is substituted therefor.